UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

ROBERT P. BANKS,   Case No. 16-12978-KHK
(Chapter 7)

    Debtor.

## MEMORANDUM OPINION

THIS CASE came before the Court on the Rule to Show Cause issued April 20, 2017, ordering Craig E. Baumann ("Baumann") to appear and show cause (i) why he should not be held in contempt for a willful violation of the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a), and for a willful violation of the Court's discharge order and the injunction imposed by 11 U.S.C. § 524, and (ii) why sanctions, including an award of damages, both actual and punitive, and an award of attorney's fees should not be imposed upon him.  An evidentiary hearing was conducted on July 25, 2017 (the "Trial"), at the conclusion of which the Court advised Debtor's counsel to submit a fee application (the "Fee Application") and ordered Baumann to immediately remit to the Debtor the monies of the Debtor being held by Baumann in his trust account.  The Court thereupon took the matter of damages under advisement.  This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.[1]

### Facts

Baumann is an attorney licensed to practice law in the Commonwealth of Virginia and is a member in good standing of the bar of this Court.  Robert P. Banks (the "Debtor") is

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

employed as a mechanic by Beatty Management Company ("Beatty Management"). The Debtor rented an apartment from Baumann in 2015. After the Debtor defaulted under the terms of the lease, Baumann had the Debtor evicted from the apartment. On September 23, 2015, Baumann obtained a judgment against the Debtor in the General District Court of Fairfax County (the "General District Court") for unpaid rent. On November 16, 2015, Baumann commenced an action in the General District Court to garnish the Debtor's wages (the "First Garnishment"). The return date on the First Garnishment was set for July 6, 2016, at which time the General District Court ordered that the funds withheld from the Debtor's wages pursuant to the First Garnishment be paid over to Baumann (the "Garnishment Order"). On August 10, 2016, Bauman commenced a second garnishment action against the Debtor in the General District Court, returnable on January 31, 2017 (the "Second Garnishment").

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Case") on August 30, 2016 (the "Petition Date"), in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"). Baumann was properly scheduled as an unsecured creditor in the amount of $8,709.40 on Schedule F annexed to the bankruptcy petition. Baumann was included on the creditor service list that the Debtor filed with the Court. The Clerk's Office of this Court duly issued a Notice of Chapter 7 Bankruptcy Case to Baumann and all of the Debtor's other scheduled creditors on Official Form 309A (the "Bankruptcy Notice"). The Debtor's bankruptcy counsel, Thomas Andrews ("Andrews"), served Baumann with a Suggestion of Bankruptcy that he filed in the General District Court. Notwithstanding the commencement of the Debtor's bankruptcy case, Baumann took no action to stop the Second Garnishment. The Debtor received a discharge on December 15, 2016.[2]

---

[2] The Clerk's Office certified that a copy of the discharge was sent to Baumann on December 17, 2016.

As the return date for the First Garnishment fell within the 90-day period immediately preceding the Petition Date, the Garnishment Order on the First Garnishment was avoidable under 11 U.S.C. § 547 as a preferential transfer. *See In re Baum,* 15 B.R. 538, 540–41 (Bankr. E.D. Va. 1981). The Debtor claimed $500 of his prepetition garnished wages exempt on his schedule C pursuant to Virginia Code § 34-4. The Debtor was entitled to avoid and recover from Baumann the amount he had claimed as exempt in accordance with 11 U.S.C. § 522(g) and (h). Baumann agreed to have the $500 exempt portion from the First Garnishment returned to the Debtor. Accordingly, Baumann sent Andrews two copies of an order of payment (the "Order of Payment") to be entered by the General District Court decreeing that $500 of the funds that had been withheld by the Debtor's employer pursuant to the First Garnishment be paid over to Andrews for the benefit of the Debtor. Andrews endorsed the orders and returned them to Baumann.

Some party (the identity of whom has no bearing on the ruling in this case) altered the Order of Payment that was entered by the General District Court after it had been endorsed by Andrews.[3] The first alteration changed the case number from the First Garnishment action to the Second Garnishment action. The second alteration changed the number of garnished checks from one $500 check to four checks. The alterations that were made to the Order of Payment had the effect of making the Order of Payment completely inapplicable to the First Garnishment and the Debtor's recovery of the exempted funds. Instead, the altered Order of Payment purported to deal only with the Second Garnishment of the Debtor's postpetition wages.

The altered Order of Payment was entered by the General District Court on January 31, 2017, the return date for the Second Garnishment. The General District Court sent Baumann

---

[3] The parties jointly filed a post-trial exhibit that indicates that the alterations were made by the General District Court.

four checks totaling $1,667 issued by the Debtor's employer for the monies withheld from the Debtor's postpetition wages. Baumann did not immediately return these postpetition funds to the Debtor. Baumann did not send a copy of the altered Order of Payment to Andrews after it had been entered by the General District Court. Baumann did not take any action to have the altered Order of Payment corrected by the General District Court.

Instead, Baumann negotiated the four checks and retained the proceeds in his escrow account. One of the four checks did not clear the employer's account.[4] On February 15, 2017, Baumann sent an e-mail communication to the Debtor's employer, Beatty Management, asking when Beatty Management would be remitting the full amount due under the Second Garnishment action (the "Dunning Communication"). The Dunning Communication threatened to have the General District Court issue a show cause summons against Beatty Management if the wages were not turned over to him. As a result of this Dunning Communication, Beatty Management withheld additional money from the Debtor's postpetition wages and sent Baumann the replacement check he had demanded (the "Replacement Check").

Postpetition wages were withheld from the Debtor on at least four occasions as a result of the Second Garnishment. The Debtor never did receive the $500 portion that he had claimed exempt from the First Garnishment. Baumann acknowledged that he continues to hold the funds he received from the Second Garnishment in his trust account along with the Replacement Check. On March 13, 2017, the Debtor filed a Motion to Reopen his Bankruptcy Case along with an Application for a Rule to Show Cause (the "Application"). A copy of the Application was sent to Baumann the same day. On March 22, 2017, Baumann filed a response to the Application, contesting the relief requested by the Debtor. A hearing on the Application

---

[4] Apparently the Debtor's employer, having received notice of the Bankruptcy Case, issued instructions to stop payment on the check.

4

occurred on April 11, 2017. The Bankruptcy Case was reopened by an order entered April 20, 2017. The Court entered the Rule to Show Cause the next day.

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. A proceeding to prosecute a violation of the automatic stay or a violation of the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *See Budget Serv. Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir. 1986). Accordingly, the Court has the authority to enter a final order subject to the right of appeal under 28 U.S.C. § 158. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

## Analysis

The filing of a petition under section 11 U.S.C. § 301 operates as a stay preventing most creditor actions against the debtor, property of the debtor, and property of the estate. 11 U.S.C. § 362(a). The automatic stay is:

> one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Better Homes of Virginia*, 804 F.2d at 292 (quoting H.R. Rep. No. 95-595, at 340–42 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6296–97; S. Rep. No. 95-989, at 54–55 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5840). The stay, which takes effect immediately upon filing a bankruptcy petition, applies nationwide and without notice. *See In re A.H. Robins Co.*, 63 B.R. 986, 988 (Bankr. E.D. Va. 1986) (citing *In re Johns-Manville Corp.,* 57 B.R. 680, 686

5

(Bankr. S.D.N.Y. 1986)). It stays, among other things, "any act to collect . . . a claim against the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(6). In a case under chapter 7, the automatic stay remains in effect as to actions against the debtor until the debtor is granted or denied a discharge. *See id.* § 362(c)(2)(C).

Section 524(a)(2) of the Bankruptcy Code imposes an injunction after the issuance of the discharge order "against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as personal liability of the debtor, whether or not discharge of such debt is waived." With respect to dischargeable debts, the discharge injunction serves to replace the automatic stay. Any behavior which would constitute a violation of the automatic stay would also constitute a violation of the discharge injunction once the stay has expired. *See In re Mickens*, 229 B.R. 114, 117 (Bankr. W.D. Va. 1999) (citing *In re Holland,* 21 B.R. 681, 688 (Bankr. N.D. Ind. 1982)). Although there is no specific provision for the enforcement of the discharge injunction as there is for the automatic stay in 11 U.S.C. § 362(k), a violation of the discharge injunction may be prosecuted for contempt of court, and appropriate sanctions may be awarded. *See In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007); *In re Gates*, Case No. 04-12076, Adversary Proceeding No. 04-1240, 2005 Bankr. LEXIS 2034, at *11 (Bankr. E.D. Va. May 10, 2005); *Cherry v. Arendall (In re Cherry),* 247 B.R. 176, 186–87 (Bankr. E.D. Va. 2000).

Baumann violated the automatic stay when he failed to dismiss the Second Garnishment upon learning that the Debtor had filed his Bankruptcy Case. *See In re Highsmith*, 542 B.R. 738, 749 (Bankr. M.D. N.C. 2015) (holding that a creditor violates the automatic stay willfully when it has knowledge of the bankruptcy and it fails to take possible and necessary action to prevent the continuation of the collection process); *In re Gordon Properties LLC,* 460 B.R. 681,

694 (Bankr. E.D. Va. 2011) (stating the same) (quoting *In re Baum*, 15 B.R. at 541); *Brown v. Town & Country Sales and Serv., Inc. (In re Brown),* 237 B.R. 316, 319–20 (Bankr. E.D. Va. 1999) (holding that a secured creditor had an affirmative duty to return to the debtors a vehicle which it had lawfully repossessed prepetition); *In re Manuel,* 212 B.R. 517, 519 (Bankr. E.D. Va. 1997) (holding that a creditor who issues a garnishment before a debtor files bankruptcy has the affirmative duty to promptly dismiss the garnishment upon filing of the bankruptcy petition); *In re Holland,* 21 B.R. at 688 (holding that "*inactivity* on the part of a creditor with notice of the bankruptcy which permits the forces of collection to go forward is as offensive to the automatic stay provision as is activity") (emphasis added); *In re Elder,* 12 B.R. 491, 494–96 (Bankr. M.D. Ga. 1981) (holding that when a creditor sets the garnishment in motion, it is responsible for what happens thereafter); *see also In re Mickens*, 229 B.R. 114 (Bankr. W.D. Va. 1999); *In re Dennis,* 17 B.R. 558 (Bankr. M.D. Ga. 1982); *In re Dohm*, 14 B.R. 701 (Bankr. N.D. Ill. 1981).   Indeed, Baumann conceded at trial that his actions violated the automatic stay.

Baumann violated the discharge injunction when he used the altered Order of Payment to collect the discharged prepetition debt from the Debtor.   *See In re Jones*, 367 B.R. at 567; *In re Gates,* 2005 Bankr. LEXIS 2034, at *12; *In re Mickens,* 229 B.R. at 116–18. Baumann's contention that the altered Order of Payment evidenced an agreement between Baumann and Andrews that permitted Baumann to receive and retain the Debtor's postpetition wages from the Second Garnishment defies credulity.

First, black letter bankruptcy law does not permit such an agreement.   In the case at bar, there was no approved reaffirmation agreement.[5]   Second, the General District Court had no

---

[5] Section 524 of the Bankruptcy Code governs reaffirmation agreements.   It provides that:
    c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt

7

jurisdiction to adjudicate Baumann's entitlement to collect a discharged debt in any event. Third, Baumann, as an experienced bankruptcy practitioner, knew that any agreement to collect a prepetition, discharged debt was illegal once the discharge had been granted. And fourth, Andrews testified to the contrary.[6] Similarly, Baumann's Dunning Communication threatening legal action against the Debtor's employer if the funds from the Second Garnishment were not paid to him was a further violation of the discharge injunction. It interfered with the Debtor's fresh start and jeopardized his employment with Beatty Management.[7]

The gravamen of Baumann's defense is that the Debtor did nothing to mitigate his damages and that the Debtor's recovery should be limited to the funds Baumann holds in

---

is waived, only if–
(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of [title 11 of the United States Code];
(2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;
(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that–
    (A) such agreement represents a fully informed and voluntary agreement by the debtor;
    (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
    (C) the attorney fully advised the debtor of the legal effect and consequences of–
        (i) an agreement of the kind specified in this subsection; and
        (ii) any default under such an agreement;
(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;
(5) the provisions of subsection (d) of this section have been complied with; and
(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as–
    (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
    (ii) in the best interest of the debtor.

[6] As the Order of Payment was altered after Andrews had endorsed it, it could not in any logical sense have represented an arrangement to which he had agreed.

[7] The Debtor testified that his employer met with him to express its displeasure at having to deal with the threatened legal action on account of Baumann. Thereafter, the Debtor's working environment became strained. The Debtor was then passed over for an upcoming promotion as a result of Baumann's illegal contact with his employer.

8

escrow.[8]   Relying on *In re Sheets,* Case No. 12-31723, 2014 WL 4831339, at *4 (Bankr. E.D. Va. Sept. 29, 2014), Baumann argues that the trial of this matter could have been avoided, if only the Debtor had asked for the money back.   This argument ignores that it was Baumann who had the affirmative duty to remit to the Debtor the wages Baumann had unlawfully garnished. Baumann, not the Debtor, was the experienced bankruptcy professional.   Baumann knew he was attempting collection of a discharged debt.   Baumann ignored the notices he had previously received: first, concerning the commencement of the bankruptcy case; second, concerning the suggestion in garnishment; and third, concerning the Debtor's discharge.   Indeed, when Baumann received the Debtor's (i) Motion to Reopen the Bankruptcy Case and (ii) Application for the Rule to Show Cause, Baumann did not immediately apologize for his mistake and surrender the postpetition wages he was holding.   Rather he took a contrarian position. Baumann contested the two matters.   Even after the Debtor's Motions to Reopen and Application were granted over Baumann's objection, Baumann continued to hold on to the funds from the Second Garnishment.   Only on the eve of trial did Baumann offer to return the postpetition wages to the Debtor.   Even then, the offer was limited to the escrowed monies from the Second Garnishment and did not include the $500 exempt portion from the First Garnishment.[9]   It is hard to fathom what more the Debtor could have done to avoid trial. Baumann should not be heard to blame the victim of Baumann's own misconduct.

---

[8] Baumann filed a motion *in limine* in which he proffered to return the escrowed funds.

[9] Baumann's counsel attempted to introduce failed settlement discussions at Trial to evidence the Debtor's failure to mitigate.  The use of those discussions for that purpose is prohibited under Rule 408 of the Federal Rules of Evidence.

9

**Relief Granted**

Section 362(k)(1) of the Bankruptcy Code specifically permits a court to impose actual damages, including costs and attorney's fees as well as punitive damages, for a willful violation of the automatic stay. *See* 11 U.S.C. § 362(k)(1); *see also Mickens v. Waynesboro Dupont Employees Credit Union, Inc. (In re Mickens)*, 229 B.R. 114, 118 (Bankr. W.D. Va. 1999). "A willful violation does not require specific intent to violate the stay, only knowledge of the stay and an intentional act." *In re Hendry*, 214 B.R. 473, 475 (Bankr. E.D. Va. 1997); *see also Better Homes of Virginia, Inc.*, 804 F.2d at 293 (finding the bankruptcy court acted within its power in assessing money damages under § 362 after concluding that the creditor "knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it"); *Davis v. I.R.S.*, 136 B.R. 414, 423 (E.D. Va. 1992). Willfulness describes the intentional nature of action taken in violation of the stay, rather than the specific intent to violate the stay. *See In re Highsmith*, 542 B.R. at 748.

Having considered the evidence, the Court finds that Baumann had actual knowledge of the Debtor's bankruptcy case.[10] Accordingly, Baumann had "knowledge of the stay and [committed] an intentional act." *In re Hendry*, 214 B.R. at 475. The Court concludes that Baumann willfully violated the automatic stay when he failed to halt the Second Garnishment after learning of the bankruptcy case.

*A.    Actual Damages*

Actual damages include those actually incurred by the debtor. *Skillforce, Inc. v. Hafer*, 509 B.R. 523, 534 (E.D. Va. 2014). Actual losses may include "lost time damages, out-of-pocket expenses, and emotional damages." *In re Ojiegbe,* 539 B.R. 474, 479 (Bankr. D.

---

[10] Baumann received both the (1) Bankruptcy Notice, and (2) Suggestion of Bankruptcy soon after the Petition Date. Moreover, Baumann conceded at trial that he was aware of the Debtor's bankruptcy case in October of 2016.

10

Md. 2015). The Debtor had lost income in the amount of $525 due to time he had to take off from work. The Debtor had been deprived of the use of the postpetition wages Baumann held for 299 days in the amount of $794.19. The Debtor suffered damages in the amount of $500 from Baumann's failure to turn over the exempt portion from the First Garnishment. The Debtor testified that the continuation of the garnishment after he had received his discharge further damaged his credit at a time when he was trying to get back on his feet and rehabilitate his rating. The Debtor's employer expressed displeasure with him after it received the Dunning Communication from Baumann threatening legal action. The Debtor testified about the chilled relationship that developed at work immediately thereafter. The Debtor was passed over for an upcoming promotion. The anxiety these events inflicted on the Debtor was neither fleeting nor trivial. The Debtor testified that he became depressed because his fresh start had been frustrated. The Debtor established a direct causal connection between his significant emotional distress and violations of the stay and the discharge order.

While an award for emotional damages may be difficult to fashion, the Debtor has, nonetheless, established that he suffered significant emotional harm. In this case, Baumann made illegal threats to the Debtor's employer which contributed to a strained work environment, the loss of a promotion, and depression. The Court finds under these circumstances that the Debtor should be entitled to recover $2,500 in emotional damages on account of the mental anguish he suffered. *See, e.g., In re Seaton,* 462 B.R. 582, 600–603 (Bankr. E.D. Va. 2011). The Court will award the Debtor actual compensatory damages, including damages for emotional distress, in the sum of $4,319.19.

### B. *Attorney's Fees*

The Debtor executed an engagement agreement under which he agreed to compensate his lawyer at an hourly rate of $425. That rate is well within the prevailing range of hourly fees charged in the Northern Virginia area by experienced bankruptcy counsel. Debtor's counsel submitted a Fee Application for the Court's review wherein he requested fees in the amount of $18,105 and reimbursement of expenses in the amount of $305. Applying the factors set forth in 11 U.S.C. § 330(a)(3), the Court finds that the legal work performed was necessary to the Debtor's representation. The Court finds that with the exception of 2.30 hours in travel time, the fees that were charged are reasonable. Travel time will be allowed at only one half of the attorney's hourly rate. The Court finds that the Fee Application otherwise complies with the twelve elements set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)), and *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985) (applying *Barber* to fee awards in Bankruptcy). The Court will award attorney's fees in favor of the Debtor and against Baumann in the reduced amount of $17,616.25 plus expenses of $305.

### C. *Punitive Damages*

Section 362(k)(1) of the Bankruptcy Code also provides that a court may award punitive damages to an individual injured by a willful violation of the automatic stay in "appropriate circumstances." While that phrase is not defined in the Bankruptcy Code, punitive damages clearly require "more than [a] mere willful violation of the automatic stay." *In re Brown*, 237 B.R. at 320–21. Some courts articulate the standard as a "reckless or callous disregard for the law or rights of others." *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 228 (9th Cir. 1989). Other courts require a violation rising to the level of "egregious or vindictive" conduct

12

resembling specific intent to violate the stay. *In re Seaton*, 462 B.R. at 604 (quoting *Rountree v. Nunnery (In re Rountree)*, 448 B.R. 389, 419 (Bankr. E.D. Va. 2011)); *see also In re Carrigan*, 109 B.R. 167, 172 (Bankr. W.D. N.C. 1989).

The Court finds that the actions of Baumann in the case at bar constituted flagrant violations of both the automatic stay and the discharge injunction. Baumann was in possession of sufficient facts that would have caused any reasonably prudent person to cease collection efforts. But, Baumann is more than just a reasonably prudent person. He is an experienced member of the bar of this Court who was extensively familiar with Bankruptcy law. *See*, *e.g.*, *Bankruptcy/Civil Litigation*, THE LAW OFFICES OF CRAIG E. BAUMANN, http://www.craigbaumann.com/practice-areas/bankruptcycivil-litigation/ (last visited Aug. 24, 2017) (advertising to clients that he is an "experienced bankruptcy attorney in Virginia"). The Court found Baumann's feigned ignorance of the law to be entirely disingenuous. As a bankruptcy practitioner, Baumann knew full well that no one was required to phone him and ask that the garnishment be dismissed. Although he had many opportunities to take corrective action, Baumann chose to persist in his course of illegal action undeterred by the automatic stay or the discharge injunction. The continued refusal to halt the Second Garnishment, the failure to remit the portion from the First Garnishment that the Debtor had claimed exempt, the threats made to the Debtor's employer in the Dunning Communication, the negotiation of the garnished funds upon receiving them from the General District Court, and then continuing to hold the Debtor's postpetition wages even after the Rule to Show Cause had been issued all rise to the level of egregious conduct for which punitive damages are appropriate.

The Court's remaining task is to determine the amount of punitive damages that are appropriate in this case. Punitive damages serve the twin aims of deterrence and retribution. *See*

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). Of particular importance to this case, a court may award punitive damages to deter future misconduct. *See Saunders v. Equifax Info. Servs., L.L.C.,* 469 F. Supp. 2d 343, 348 (E.D. Va. 2007), *aff'd sub nom. Saunders v. Branch Banking & Trust Co. of Virginia*, 526 F.3d 142 (4th Cir. 2008). Generally, courts are afforded much discretion in setting exemplary or punitive damages for a willful violation of the automatic stay.

A punitive damage award should "be based on the facts and circumstance of the defendant's misconduct." *Saunders*, 469 F. Supp. 2d at 350. Relevant factors considered by courts may include the nature of the creditor's conduct, the degree of contempt shown for adherence to the law, the nature and extent of harm to the debtor, and the creditor's ability to pay. *See Wills v. Heritage Bank (In re Wills)*, 226 B.R. 369, 376 at n.8 (Bankr. E.D. Va. 1998).[11]

In the instant case, $5,000 in punitive damages is appropriate.[12] First, Baumann has practiced law for several decades and advertises himself as an experienced bankruptcy lawyer, thus his deliberate actions in violation of the automatic stay and discharge injunction is considered particularly egregious conduct. Second, nowhere in Baumann's response to the Rule to Show Cause did Baumann ever accept responsibility or remorse for his conduct, which displays contempt for adherence to the law. Third, Baumann owns a number of properties that he leases to tenants much like the Debtor. He testified that on occasion he has had to evict

---

[11] Another factor that courts have considered is the ratio between punitive and compensatory damages. *See Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 823 (B.A.P. 1st Cir. 2002) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996)). The Fourth Circuit has recognized, however, that this ratio has less significance when the amount of compensatory damages is relatively small. *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 389–90 (4th Cir. 2015) (citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)); *Saunders,* 526 F.3d at 154.

[12] The Debtor suggested at Trial that the amount of the punitive damage award should be $7,475, which was derived by multiplying each of the 299 days that Baumann withheld the Debtor's postpetition wages by $25. While the Debtor's suggestions are appreciated, punitive damages are not "marked by a simple mathematical formula." *Gore*, 517 U.S. at 582.

some of these tenants. It is not inconceivable that some of these evicted tenants may file for bankruptcy at some time in the future, thus punitive damages will have a deterrent effect as to acting in the same fashion in the future. Fourth, given his real estate ventures and occupation, Baumann should have the financial ability to pay this punitive damages figure and let it serve as a curb on future activity of this sort. Lastly, the ratio between compensatory and punitive damages in this case is approximately 1 to 1.15, which falls squarely within constitutional bounds. *See Saunders*, 526 F.3d at 155 (upholding a 1 to 80 ratio between compensatory and punitive damages); *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 389–90 (4th Cir. 2015) (upholding a 1 to 3.6 ratio between compensatory and punitive damages). Based on all of the forgoing factors, including but not limited to the Court's desire to deter future misconduct,[13] the Court finds that in addition to an award of actual compensatory damages, an award of $5,000 in punitive damages against Baumann is reasonable and appropriate.

## Conclusion

Having determined that Baumann willfully violated both the automatic stay and the discharge injunction and that those violations rise to the level of egregious conduct, the Court will award the Debtor actual compensatory damages against Baumann in the amount of $4,319.19, plus attorney's fees and costs in the amount of $17,921.25, and punitive damages in the amount of $5,000.

---

[13] The Debtor had requested the Court to impose an injunction against Baumann enjoining him from further efforts to collect the discharged debt. While largely redundant with the discharge injunction already in place, the Court is satisfied that the amount of punitive damages will adequately remedy the problem.

A separate order shall issue.

Entered:   Aug 31 2017
         _____

                                        _____/s/ Kevin R. Huennekens_____
                                        UNITED STATES BANKRUPTCY JUDGE